Nicholas Soares (DC Bar 1015662)*
TERRIS, PRAVLIK & MILLIAN, LLP
1816 12th Street, NW, Suite 303
Washington, DC 20009
(202) 204-8481
nsoares@tpmlaw.com
*Application for admission *pro hac vice* forthcoming

Gregory L. Smith (CA Bar 171562)
YOUNG CENTER FOR IMMIGRANT CHILDREN'S RIGHTS
234 E. Colorado Blvd, Suite 515
Pasadena, CA 91101
(718) 766-8128
gsmith@theyoungcenter.org

*Counsel for Plaintiffs*
*Immigrant Legal Resource Center and Legal Services for Children, Inc.*

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IMMIGRANT LEGAL RESOURCE CENTER and LEGAL SERVICES FOR CHILDREN, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, <br> Defendant. | Case No. _____ <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

COMPLAINT (FOIA)

1. This action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.*, seeks to compel Defendant United States Immigration and Customs Enforcement (ICE) to produce documents that relate to "wellness" or "welfare" checks carried out on unaccompanied immigrant children who were released from the custody of the Office of Refugee Resettlement (ORR), an office within the United States Department of Health and Human Services' (HHS) Administration for Children and Families.

2. On August 25, 2025, Plaintiffs Immigrant Legal Resource Center (ILRC) and Legal Services for Children, Inc. (LSC) requested such records, but ICE has not produced them. Plaintiffs are statutorily entitled to disclosure of these records, which relate to matters of great public concern. Plaintiffs ask this Court to order their production.

# I

## JURISDICTION AND VENUE

3. **Jurisdiction**: This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) (FOIA jurisdiction provision) and 28 U.S.C. § 1331 (federal question jurisdiction).

4. **Venue**: Venue is proper in this District pursuant to 5 U.S.C. § 552(a)(4)(B) because Plaintiffs ILRC and LSC each have their headquarters and principal place of business in this District.

5. **Divisional Assignment**: Assignment to the San Francisco Division is proper under Civil Local Rule 3-2(c) and (d) because the work of ILRC and LSC occurs, and thus the FOIA request that is at issue in this action occurred, in the County of San Francisco within this District.

# II

## PARTIES

6. Plaintiff ILRC is a non-profit public interest organization. It works with immigrants, community organizations, legal professionals, law enforcement, child welfare professionals, and policy makers to build a democratic society that values diversity and the rights of all people. It provides community education programs, legal training and technical assistance,

and policy development and advocacy. ILRC also provides technical assistance to immigration practitioners on many aspects of immigration law. One area of focus is immigrant children and youth, and, to that end, ILRC has developed expertise with regard to the immigration system for children. ILRC publishes the only comprehensive national manual on special immigrant juvenile status (SIJS) and other immigration options for children and youth. In addition, ILRC publishes publicly available practice advisories and other written resources for legal advocates and community members focused on SIJS and other immigration options for children, as well as on the immigration enforcement practices and policies of the federal government. ILRC also provides individualized technical assistance to immigration and criminal law practitioners in individual children's immigration cases. ILRC is headquartered in San Francisco, California.

7. Plaintiff LSC provides free representation to children and youth who require legal assistance to stabilize their lives and realize their full potential. Through a holistic team approach utilizing legal advocacy and social work services, LSC's goal is to empower clients and actively involve them in the critical decisions that impact their lives. LSC uses this model to achieve safety and stability at home, educational success, and freedom from detention and deportation for its clients. LSC is headquartered in San Francisco, California.

8. Defendant United States Immigration and Customs Enforcement is a component of the United States Department of Homeland Security (DHS). ICE is charged with issues related to enforcement of immigration laws. It is an agency of the United States government within the meaning of 5 U.S.C. § 552(f). On information and belief, ICE has possession of or control over the requested records.

### III

### FACTS

**A.    The Wellness Check Program**

9. In February 2025, DHS launched what it described as a "national child welfare initiative to locate and verify" the safety of unaccompanied immigrant children who had been released to sponsors in the United States. *See* https://www.ice.gov/news/releases/dhs-initiative-

2

COMPLAINT (FOIA)

uncovers-widespread-abuse-exploitation-unaccompanied-kids-placed (June 5, 2025) (archived here on June 6, 2025). According to DHS, this initiative involves "ICE's Homeland Security Investigations special agents [] conducting welfare checks … designed to assess whether children are receiving appropriate care, attending school, complying with immigration proceedings, and—most critically—not being trafficked, exploited or abused." *Id.*

10. Beginning in early April 2025, there has been substantial media interest in these "wellness checks" (sometimes also referred to as "welfare checks") conducted nationwide on unaccompanied children released from the custody of the Office of Refugee Resettlement, an office within HHS' Administration for Children and Families.[1] On information and belief, these wellness checks have been conducted by ICE, including personnel from ICE's Homeland Security Investigations and Enforcement and Removal Operations divisions.

11. Media and advocates have expressed concern that ICE has been using these wellness checks as a pretext to support enforcement action against unaccompanied children, their caregivers, and other household members.[2] This concern is heightened by reports that other agencies, including the Federal Bureau of Investigation and the Drug Enforcement Administration, have been participating in these wellness checks.

12. Media reports indicate that, by early June 2025, as a result of these "wellness checks," at least 500 children who had been released to their sponsors were returned by ICE to

---

[1] *See, e.g.*, M. Levine et al., "FBI, other criminal investigators drafted for welfare checks on migrant children," Washington Post (April 10, 2025) (copy on file with counsel); Miriam Jordan and Christina Jewitt, "Checks on Migrant Children by Homeland Security Agents Stir Fear," N.Y. Times (May 28, 2025) (copy on file with counsel).

[2] *See, e.g.*, Kids in Need of Defense, "Family Separation 2.0: KIND Urges Immediate Administration Action to Halt Its Return to this National Nightmare" (June 10, 2025) (available at https://supportkind.org/press-releases/family-separation-2-0-kind-urges-immediate-administration-action-to-halt-its-return-to-this-national-nightmare/) (archived here on Nov. 11, 2025).

3

COMPLAINT (FOIA)

ORR custody.[3] This has been described as "an unprecedented departure from previous years when such occurrences were rare."[4]

13. Plaintiffs are concerned that ICE and other law enforcement agencies are using "wellness checks" as a pretext for immigration enforcement actions against unaccompanied children and their caregivers, parents, and other sponsors, thus traumatizing and harming the children whose wellness ICE is claiming to serve.

**B.    Plaintiffs' FOIA Request**

14. On August 25, 2025, pursuant to 5 U.S.C. § 552(a)(3), Plaintiffs submitted to ICE the FOIA request at issue in this case through the Secure Release Portal. Plaintiffs requested:

> Request No. 1: All policies, procedures, forms, and guidance concerning "welfare checks," including, without limitation, the DHS memorandum concerning "welfare checks" entitled "Unaccompanied Alien Children Joint Initiative Field Implementation" (including all drafts thereof) (the "Memorandum").
>
> Request No. 2: All intra- or inter-agency communications concerning the records sought in Request 1.
>
> Request No. 3: All records documenting the number of unaccompanied children and/or any other individuals that were or have been identified to undergo "welfare checks" and/or were subjected to "welfare checks."
>
> Request No. 4: All records related to the "Power BI application" or "Power BI dashboard" used to conduct "welfare checks."
>
> Request No. 5: All documents concerning ICE follow-up or enforcement actions and any other enforcement actions by offices within DHS or other federal agencies that relate to and/or resulted from "welfare checks."
>
> Request No. 6: All records documenting "welfare checks" that have been attempted and/or conducted, including, but not limited to, target packets and completed copies of UAC Field Contact Documentation Forms and/or Continued Presence requests.

---

[3] *See, e.g.*, Priscilla Alvarez, "Trump administration takes hundreds of migrant children out of their homes, into government custody," CNN (June 4, 2025) (available at https://edition.cnn.com/2025/06/04/politics/migrant-children-families-government-custody) (copy on file with counsel).

[4] *Id.*

4

COMPLAINT (FOIA)

Request No. 7: All records documenting detentions resulting from "welfare checks," including whether persons were transferred to ORR or ICE custody or arrested, removed, or deported following such detentions.

Request No. 8: All warrants issued that relate, in whole or in part, to "welfare checks."

Request No. 9: All records regarding the criteria for children identified to undergo welfare checks and/or subjected to "welfare checks," including criteria related to children's sponsors.

Request No. 10: All guidance, policies, procedures, and other records related to the designation of unaccompanied children or any other individuals as "flight risks," "public safety" risks or "border security" risk under the Memorandum (defined in Request No. 1).

Request No. 11: All communications regarding "welfare checks," including electronic communications, between and among sub-agencies, offices and other components of DHS.

Request No. 12: All communications between DHS and any other government agency, including but not limited to HHS/ORR, the FBI and/or the DEA, concerning "welfare checks."

Request No. 12a:[5] All training materials that pertain to "welfare checks."

Request No. 13: Any agreements between DHS and HHS relating to information sharing between the agencies or any of each agency's components, in effect since November 1, 2024.

Request No. 14: All policies and records related to DHS personnel, other federal agency staff, and other federal employee access to the UAC Portal and/or ORR case information and files pertaining to unaccompanied children since November 1, 2024, including records pertaining to the level of access of personnel to the UAC Portal.

15. Plaintiffs requested a FOIA fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). Plaintiffs also requested expedited processing of the FOIA request.

16. FOIA requires agencies to "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of [a FOIA] request whether to comply with such [a] request[, and to] … immediately notify the person making such request of such determination and the reasons therefor[,]" and to provide information regarding the right to seek

---

[5] Due to a typographical error, the FOIA request included two items labeled "Request No. 12." To avoid confusion, the second of those requests has been relabeled as "Request No. 12a" herein.

5

COMPLAINT (FOIA)

assistance from the FOIA Public Liaison and the right to appeal an adverse decision. 5 U.S.C. § 552(a)(6)(A)(i); *see also* 6 C.F.R. § 5.5 (2022) (regarding timing of responses to requests to components of DHS). After a determination is made, the agency must "make the records promptly available." 5 U.S.C. § 552(a)(3)(A).

17. An agency is permitted a 10-day extension if statutorily defined "unusual circumstances" apply and written notice is made to the requestor setting forth those unusual circumstances. 5 U.S.C. § 552(a)(6)(B); *see also* 6 C.F.R. § 5.5(c) (DHS regulation regarding application of the unusual circumstances exception).

18. On August 27, 2025, ICE acknowledged the receipt of Plaintiffs' request and assigned it Case Number 2025-ICFO-56395. In that same communication, ICE denied Plaintiffs' request for expedited processing and invoked the 10-day extension of time to respond to the request under 5 U.S.C. § 552(a)(6)(B). *Id.*

19. Although ICE invoked the 10-day extension pursuant to 5 U.S.C. § 552(a)(6)(B), it did not notify Plaintiffs of "the date on which a determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B)(i).

20. Even with the 10-day extension, ICE was obligated to issue its determination no later than October 7, 2025.

21. Since the August 27, 2025 acknowledgement referenced above, Plaintiffs have received no communications from ICE regarding the request, and no documents have been produced.

22. Plaintiffs have exhausted their administrative remedies. *See* 5 U.S.C. § 552(a)(6)(C)(i) ("Any person making a [FOIA] request to any agency for records … shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of [FOIA].").

23. As of the filing of this Complaint, more than five months have passed without a determination or receipt of any documents.

IV

**CLAIM I: FAILURE TO PRODUCE DOCUMENTS IN VIOLATION OF FOIA**

24. FOIA and its implementing regulations required ICE to issue its determination on Plaintiffs' request and produce the documents pursuant to the timelines described above. *See* 5 U.S.C. § 552(a)(6)(A)(i), (a)(3)(A); 6 C.F.R. § 5.4-5.6. ICE failed to do so.

25. ICE has violated FOIA and its implementing regulations by failing to issue a determination and produce the requested documents.

V

**PRAYER FOR RELIEF**

Plaintiffs hereby request that the Court:

(1) Declare that ICE's failure to issue a timely determination and produce the records requested by Plaintiffs is unlawful;

(2) Order ICE to issue a prompt determination and produce the requested records to Plaintiffs;

(3) Award Plaintiffs' reasonable attorneys' fees and other litigation costs reasonably incurred in this action, as provided in 5 U.S.C. § 552(a)(4)(E); and

(4) Grant such other and further relief the Court may deem just and proper.

Respectfully submitted,
 s/ Gregory L. Smith

Nicholas Soares (DC Bar 1015662)*
TERRIS, PRAVLIK & MILLIAN, LLP
1816 12th Street, NW, Suite 303
Washington, DC 20009
(202) 204-8481
nsoares@tpmlaw.com
*Application for admission *pro hac vice* forthcoming

Gregory L. Smith (CA Bar 171562)
YOUNG CENTER FOR IMMIGRANT CHILDREN'S RIGHTS
234 E. Colorado Blvd, Suite 515
Pasadena, CA 91101
(718) 766-8128
gsmith@theyoungcenter.org

February 23, 2026

*Counsel for Plaintiffs*